# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

| | |
|---|---|
| NANCY C. SALAS,<br><br>   Plaintiff,<br><br>  v.<br><br>MONSANTO COMPANY; BAYER CORPORATION; BAYER AG; ANDREW JACK CONROY; HOME DEPOT USA, INC.; KLI SHELL LUMBER & HARDWARE, LLC; and ORLANDO VALDES,<br><br>   Defendants. | Case No._____ |

## DEFENDANT MONSANTO COMPANY'S NOTICE OF REMOVAL

Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws), defendant Monsanto Company ("Monsanto") hereby gives notice of removal of this action, captioned *Nancy C. Salas v. Monsanto Company, et al.*, bearing Case Number 2021-000615-CA-01, from the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida to this Court.[1] Pursuant to 28 U.S.C. § 1446(a), Monsanto provides the following statement of grounds for removal.

## INTRODUCTION

1. In this products liability lawsuit, Plaintiff Nancy Salas sues Monsanto (and other defendants) for injuries allegedly caused by Monsanto's Roundup®-branded herbicides, which have glyphosate as their active ingredient. For decades, farmers have used glyphosate-based

---

[1] The Complaint named two other defendants – Transform SR Development LLC d/b/a Kmart and Jose Luis Martinez Alvarez. Plaintiff voluntarily dismissed those defendants on February 17, 2021, so they are no longer part of this lawsuit and therefore are not included in the caption of this Notice of Removal.

herbicides to increase crop yields, and home-owners, landscaping companies, and local government agencies have used these herbicides for highly effective weed control. Glyphosate is one of the most thoroughly studied herbicides in the world, and glyphosate-based herbicides have received regulatory approval in more than 160 countries. Since 1974, when Monsanto first introduced a Roundup®-branded herbicide to the marketplace, the United States Environmental Protection Agency repeatedly has concluded that glyphosate does not cause cancer – including as recently as January 2020. Nevertheless, Plaintiff alleges that she developed cancer – specifically, non-Hodgkin's lymphoma ("NHL") – caused by exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides.

2. As the Eleventh Circuit has stated repeatedly, "[t]he removal process was created by Congress to protect defendants. Congress did not extend such protection with one hand, and with the other give plaintiffs a bag of tricks to overcome it." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (quotation marks omitted); *see Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 766 (11th Cir. 2010 (quoting *Legg*, 428 F.3d at 1325)). Recognizing what the "Supreme Court long ago admonished," the Eleventh Circuit also has explained that "'the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court.'" *Legg*, 428 F.3d at 1325 (quoting *Wecker v. Nat'l Enameling & Stamping Co.*, 204 U.S. 176, 186 (1907)).

3. In this case, Plaintiff (a Florida citizen) fraudulently joined Florida defendants – Andrew Jack Conroy, KLI Shell Lumber & Hardware, LLC ("KLI Shell"), and Orlando Valdes – in an attempt to deprive Monsanto of its important right to remove this lawsuit to federal court. As discussed in more detail below, those three defendants never had any control over, any

involvement with, or any connection whatsoever to the Roundup®-branded herbicides that allegedly caused Plaintiff's injuries.

4. When the citizenships of those Florida defendants are disregarded as required by the "fraudulent joinder" doctrine, this Court has subject matter jurisdiction based on diversity of citizenship. Plaintiff is a Florida citizen, and the other defendants are not Florida citizens for purposes of federal diversity jurisdiction. Thus, complete diversity of citizenship exists here as required by 28 U.S.C. § 1332. The jurisdictional-amount-in-controversy requirement is also satisfied because Plaintiff seeks damages for cancer (NHL) allegedly caused by exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides.

## BACKGROUND AND PROCEDURAL HISTORY

5. In January 2021, Plaintiff filed a Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Monsanto and other defendants. *See Salas v. Monsanto Company, et al.*, Case No. 2021-000615-CA-01 (the "State Court Action").

6. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the Summons and Complaint (and other pleadings) served in the State Court Action are attached collectively as **Exhibit 1**. Plaintiff seeks damages for NHL allegedly caused by exposure to Monsanto's Roundup®-branded, glyphosate-based herbicides. *See, e.g.*, Complaint ¶¶ 1, 4, 135-40, 145-51.

7. In February 2021, Monsanto removed the State Court Action to this Court based on 28 U.S.C. § 1452 because: (a) the Complaint asserted claims against Transform SR Development LLC d/b/a Kmart and Jose Luis Martinez-Alvarez; (b) those claims were precluded by prior federal bankruptcy proceedings; (c) the inclusion of those claims meant that the State Court Action was a civil proceeding arising in or related to a case under title 11 of the United

States Code (*i.e.*, the United States Bankruptcy Code); and (d) removal was proper based on 28 U.S.C. § 1452 because 28 U.SC. § 1334(b) gave this Court subject matter jurisdiction over the State Court Action.

8. To avoid litigating this lawsuit in this Court, Plaintiff immediately dismissed Transform SR Development LLC d/b/a Kmart and Jose Luis Martinez-Alvarez, *see* Notice of Voluntary Dismissal (attached as **Exhibit 2**), and filed a motion to remand this lawsuit to Florida state court. Monsanto did not oppose that motion, so this Court granted the motion and remanded this lawsuit.

## BASIS FOR REMOVAL – DIVERSITY JURISDICTION

I. **Complete Diversity Of Citizenship Exists In This Lawsuit.**

9. Based on the Complaint, Plaintiff is, and was at the time the State Court Action was filed, a resident and citizen of the State of Florida. Complaint ¶¶ 2, 134-35.

10. Monsanto is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Missouri. Complaint ¶ 4. Thus, Monsanto is deemed to be a citizen of Delaware and Missouri, for purposes of federal diversity jurisdiction.

11. Bayer Corporation is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Indiana, with its principal place of business in the State of New Jersey. Consent to Removal by Defendant Bayer Corporation (attached as **Exhibit 3**). Thus, Bayer Corporation is deemed to be a citizen of Indiana and New Jersey, for purposes of federal diversity jurisdiction.

12. Bayer AG is, and was at the time the State Court Action was filed, a German stock company with its principal place of business in Germany. *See* Complaint ¶ 5. Thus, Bayer

AG is deemed to be a citizen of Germany – *i.e.*, a foreign citizen – for purposes of federal diversity jurisdiction.

13. Home Depot USA, Inc. ("Home Depot") is, and was at the time the State Court Action was filed, a corporation incorporated under the laws of the State of Delaware, with its principal place of business in the State of Georgia. Complaint ¶ 7. Thus, Home Depot is deemed to be a citizen of Delaware and Georgia, for purposes of federal diversity jurisdiction.

14. As discussed below, the citizenships of the other defendants (Mr. Conroy, KLI Shell, and Mr. Valdes) must be disregarded because Plaintiff fraudulently joined those non-diverse defendants.

15. Although the general rule is that complete diversity of citizenship is required for a federal court to have diversity-based subject matter jurisdiction, when a plaintiff has fraudulently joined a non-diverse defendant, "the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Jackson v. Bank of America, N.A.*, 578 F. App'x 856, 858 (11th Cir. 2014) (quotation marks omitted); *see also De Varona v. Discount Auto Parts, LLC*, 860 F. Supp. 2d 1344, 1346 (S.D. Fla. 2012) ("In determining whether diversity jurisdiction exists, courts must disregard the citizenship of fraudulently joined parties."). Fraudulent joinder also renders the so-called "forum defendant rule" inapplicable because that statutory provision applies only to "properly joined" defendants. 28 U.S.C. § 1441(b).

16. One way to establish fraudulent joinder is for the removing defendant to show that there is not "any reasonable possibility" that the plaintiff has a cause of action against the non-diverse defendant, *Legg*, 428 F.3d at 1324, and "[t]he potential for legal liability must be reasonable, not merely theoretical," *id*. at 1325 n.5 (quotation marks omitted); *see Jackson*, 578

F. App'x at 859 (citing *Legg*, 428 F.3d at 1324-25 n.5); *De Varona*, 860 F. Supp. 2d at 1346 ("A defendant is fraudulently joined where there is no 'reasonable basis' for a claim against it." (citing, *inter alia*, *Legg*, 428 F.3d at 1325 n.5)).

**A. Plaintiff Fraudulently Joined Mr. Conroy.**

17.  In this case, Plaintiff sued Mr. Conroy in the hope that adding claims against that Florida defendant would prevent removal due to lack of diversity jurisdiction and/or due to the forum defendant rule. Although the Complaint includes several causes of action, it asserts only certain claims against Mr. Conroy: Count I (Strict Products Liability) – including design defect, manufacturing defect, and failure to warn – and Count II (Negligence).

18.  Plaintiff alleges that, "[a]t all times material, Defendant Andrew Jack Conroy was employed by Monsanto as its industrial, turf and ornamental (ITO) herbicide Representative for the Eastern United States, including Florida." Complaint ¶ 6. She also contends that Mr. Conroy "is an IT&O Account Representative for Monsanto, responsible for sales and marketing to distributors, retailers, and users of Roundup and other glyphosate-containing products in Florida" and that "Mr. Conroy engaged in the marketing, promotion and sale of these products, aware of their carcinogenic or potentially carcinogenic properties, but failed to inform any of his sales targets of such danger." *Id*. ¶ 125. Claiming that Roundup®-branded herbicides are defective products, Plaintiff alleges that the defects in those products "were present when Monsanto and Mr. Conroy placed them into the stream of commerce" and that Roundup®-branded herbicides "reached the intended consumers, handlers, users and other persons coming into contact and exposed with these products in Florida, including Plaintiff, without substantial change in their condition as designed, manufactured, sold, distributed[,] labeled, and marketed by Monsanto and Mr. Conroy." *Id*. ¶ 147.

19. The Complaint alleges that Plaintiff used Roundup®-branded herbicides at her residences from approximately 2004 to 2014. Complaint ¶¶ 135, 138. She allegedly purchased those products from the following stores: (a) Home Depot stores in Miami, Florida; (b) a Kmart store in Key Largo, Florida; and (c) a KLI Shell Lumber & Hardware, LLC store located on Overseas Highway in Key Largo, Florida (the "KLI Shell Overseas Highway Store"). *Id*. ¶¶ 7, 8, 10, 126, 128, 131, 136, 200, 208, 231, 239, 262, 270. Plaintiff does ***not*** allege that Mr. Conroy worked at any of those stores; sold any Roundup®-branded herbicides directly to her; or recommended that she purchase or use Roundup®-branded herbicides. Indeed, Plaintiff does not allege that she ever had any conversations or other communications with Mr. Conroy.

20. Plaintiff fraudulently joined Mr. Conroy because, as discussed below, there is "no reasonable possibility," *Legg*, 428 F.3d at 1324, that she can establish a cause of action against him.

21. There are three markets for which Monsanto has created and designed Roundup®-branded herbicides: (a) the agricultural market; (b) the residential-lawn-and-garden market; and (c) the industrial, turf, and ornamental ("IT&O") market. Declaration of Andrew Jack Conroy ¶ 3 ("Conroy Declaration") (attached as **Exhibit 4**). Agricultural Roundup®-branded herbicides have been designed for, and are sold (via distributors) to, farmers and other agricultural workers to eliminate weeds that adversely affect crops. *Id*. Residential-lawn-and-garden Roundup®-branded herbicides have been designed for, and are sold to, home-owners to eliminate weeds in their yards, driveways, and other parts of their residential properties. *Id*. Those herbicides are sold at hardware stores and major retail stores, like Home Depot stores. *Id*. IT&O Roundup®-branded herbicides have been designed for, and are sold (via distributors) to, companies – for example, large landscaping businesses, companies that own or operate golf courses, railroad

7

companies, and other companies – and government agencies to eliminate weeds in or near, for example, roads, golf courses, railroad tracks, or rights-of-way. *Id*.

22. Mr. Conroy has never had any role in or involvement with designing, manufacturing, packaging, assembling, creating, or obtaining regulatory approval for any kind of Roundup®-branded herbicide. Conroy Declaration ¶ 4. Moreover, Mr. Conroy has never had any role in or involvement with determining what language should be included in labelling, or what warnings should be provided, for any kind of Roundup®-branded herbicide. *Id*. He also has never had any role in or involvement with developing advertisements or commercials for any kind of Roundup®-branded herbicides or developing the content of any such advertisements or commercials. *Id*.

23. Although Mr. Conroy's job duties have involved two categories of Roundup®-branded herbicides – agricultural herbicides and/or IT&O herbicides – his job duties have never involved residential-lawn-and-garden Roundup®-branded herbicides. Conroy Declaration ¶¶ 5-6. Thus, Mr. Conroy has never had any role with or involvement in promoting, marketing, or selling residential-lawn-and-garden Roundup®-branded herbicides. *Id*. ¶ 6.

24. Mr. Conroy has never had any control over – or any connection whatsoever to – the Roundup®-branded herbicides that allegedly caused Plaintiff's injuries. Conroy Declaration ¶ 8. Mr. Conroy has never worked at a Home Depot store, or a Kmart store, or the KLI Shell Overseas Highway Store. *Id*. He has never spoken to or otherwise communicated with Home Depot USA, Inc. or any Home Depot store about Roundup®-branded herbicides. *Id*. Mr. Conroy also has never spoken to or otherwise communicated with any Kmart store about Roundup®-branded herbicides. *Id*. He has never spoken to or otherwise communicated with the KLI Shell Overseas Highway Store about Roundup®-branded herbicides. *Id*.

25. Finally, Mr. Conroy has never had any role with or involvement in the chain of distribution by which Roundup®-branded herbicides get from the point of manufacture to the point of sale to customers at Home Depot stores, Kmart stores, or the KLI Shell Overseas Highway Store. Conroy Declaration ¶ 9.

26. In these circumstances, Plaintiff clearly does not have any viable claims against Mr. Conroy under Florida law. Identifying the product that allegedly caused a plaintiff's injury as **the named defendant's** product is an essential element of the plaintiff's claims. *See, e.g.*, *Liggett Grp. Inc. v. Engle*, 853 So. 2d 434, 466 n.46 (Fla. Ct. App. 2003) ("It is aphoristic that a plaintiff cannot prevail on claims for negligence, breach of warranty or strict liability, unless the plaintiff establishes that the product which allegedly caused the plaintiff's injury was manufactured or sold by the defendant"), *approved in part and quashed in part on other grounds sub nom. Engle v. Liggett Grp., Inc.* (Fla. 2006); *Levine v. Wyeth, Inc.*, 684 F. Supp. 2d 1338, 1345 (M.D. Fla. 2010) ("It is well established under Florida law and elsewhere that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of traditional tort law."); *Devore v. Howmedica Osteonics Corp.*, 658 F. Supp. 2d 1372, 1378, 1379 (M.D. Fla. 2009) (stating that "a plaintiff must establish that it has properly identified the defendant as actually being within the distributive chain of the product which caused injury"; stating that, if the plaintiff does not prove that the defendant was ever in physical possession of the product, the plaintiff "must still establish that [the defendant] possessed some element of control over the allegedly defective product" (quotation marks omitted)).

27. Here, Mr. Conroy was not involved in any way whatsoever in the chain of distribution that led to Plaintiff allegedly buying (from the stores identified in the Complaint) the Roundup®-branded herbicides that allegedly caused her injuries, and he did not recommend that

she buy or use those products. In other words, the herbicides at issue here were not Mr. Conroy's products. Mr. Conroy had no connection to, or control over, those products, and he did not do anything (or fail to do anything that he was required to do) that caused Plaintiff's alleged injuries. Therefore, Mr. Conroy cannot be held strictly liable to Plaintiff, and he owed no duty to her, so he also cannot be held liable to her on a negligence claim. *See Devore*, 658 F. Supp. 2d at 1376-79 (ruling that distributor was fraudulently joined under Florida law in personal injury lawsuit); *Fowler v. Wyeth*, No. 3:04-CV-83/MCR, 2004 WL 3704897, at *4 & n.7 (N.D. Fla. May 14, 2004) (ruling that defendant-company's sales representatives were fraudulently joined under Florida law in personal injury lawsuit); *Kearney v. Wyeth*, No. 6:03-cv-288-Orl-31KRS, 2003 WL 25548422 (M.D. Fla. May 9, 2003) (ruling that defendant-company's sales representative was fraudulently joined under Florida law in personal injury lawsuit); *Campana v. American Home Prods. Corp.*, No. 1:99cv250 MMP, 2000 WL 35547714, at *3-4 (N.D. Fla. Mar. 7, 2000) (same); *see also Legg*, 428 F.3d at 1323-24 (ruling that defendant-company's sales representative was fraudulently joined under Alabama law, based on his "sworn statement that he never promoted or sold" the product that allegedly caused plaintiff's injuries).

28. In sum, it is clear that Plaintiff does not have any viable claims against Mr. Conroy within the meaning of the fraudulent joinder standard discussed above. Accordingly, this Court should disregard his Mr. Conroy's citizenship when determining whether this removal is proper and whether the Court has subject matter jurisdiction over this lawsuit based on diversity of citizenship.

### B. Plaintiff Fraudulently Joined KLI Shell and Mr. Valdes.

29. Plaintiff sued two other Florida defendants – KLI Shell and Mr. Valdes – in the hope of preventing Monsanto from removing his case to this Court. The Complaint asserts

claims against KLI Shell for strict liability (Count IX), negligence (Count X), and breach of implied warranties (Count XI).  Plaintiff alleges that Mr. Valdes, "[a]t all times material," was employed by KLI Shell as its owner and CEO, Complaint ¶ 9, and that she purchased Roundup®-branded herbicides from Mr. Valdes at the KLI Shell Overseas Highway store, *see id*. ¶ 239. The Complaint asserts one claim – negligence (Count X) – against Mr. Valdes.  The claims against KLI Shell and Mr. Valdes are based on the allegation that Plaintiff used Roundup®-branded herbicides at her residences from approximately 2004 to 2014, *id*. ¶¶ 135, 138, after purchasing those products from certain stores, including the KLI Shell Overseas Highway Store, *id*. ¶¶ 8, 128, 136, 239.

30. However, Plaintiff fraudulently joined KLI Shell and Mr. Valdes because, as discussed below, there is "no reasonable possibility," *Legg*, 428 F.3d at 1324, that she can establish a cause of action against either of those defendants.

31. The allegations regarding KLI Shell and Mr. Valdes clearly are not, and cannot be, correct.  Declaration of Orlando Valdes ¶ 3 ("Valdes Declaration") (attached as **Exhibit 5**). Before March 2017, KLI Shell did not have any ownership interest in – and did not have any role in managing, running, or operating – the store located at 102265 Overseas Highway, Key Largo, Florida (the "Overseas Highway Store").  *Id*. ¶ 4.  Before March 2017, Mr. Valdes did not work at – and did not have any role in managing, running, or operating – the Overseas Highway Store. *Id*.  Before March 2017, Mr. Valdes did not have any ownership interest in: (a) the Overseas Highway Store; or (b) in any company with an ownership interest in that store.  *Id*.

32. In March 2017, KLI Shell acquired the Overseas Highway Store through an asset purchase agreement with the company that owned the store ("the Seller").  Valdes Declaration ¶ 5.  Mr. Valdes was involved in that asset purchase in his capacity as Chief Executive Officer of

KLI Shell.  *Id*.  The closing date of that asset purchase (March 24, 2017) was long after Plaintiff allegedly stopped using Roundup®-branded herbicides in 2014.  *Id*.

33. If Plaintiff purchased any Roundup®-branded herbicides from the Overseas Highway Store before the closing date of that asset purchase transaction, KLI Shell did not assume or otherwise become responsible for any actual or potential liabilities related to her purchases of those products; any such actual or potential liabilities remained with the Seller.  Valdes Declaration ¶ 6.  When KLI Shell acquired the Overseas Highway Store through that asset purchase transaction, the Seller and KLI Shell agreed that KLI Shell did not assume or otherwise become responsible for any of the Seller's obligations or liabilities arising out of, based upon or resulting from any actions, suits, claims or proceedings, whether in law or equity, pending or threatened, based upon any transactions or occurrences or acts or omissions of the Seller or its agents, representatives, employees or shareholder on or prior to the closing date.  *Id*.  The Seller and KLI Shell also agreed that KLI Shell did not assume or otherwise become responsible for any of the Seller's obligations or liabilities for any civil liability (including punitive damages, if any) imposed upon the Seller on account of any fraudulent, criminal, intentional, willful or negligent acts or omissions of the Seller or its agents, representatives, employees, or shareholder.  *Id*.

34. In his personal capacity, Mr. Valdes did not assume or otherwise become responsible for any of the Seller's obligations or actual or potential liabilities.  Valdes Declaration ¶ 7.

35. Thus, KLI Shell and Mr. Valdes never had any control over – or any connection whatsoever to – the Roundup®-branded herbicides that allegedly caused Plaintiff's injuries.  Valdes Declaration ¶ 8.

36. More generally, KLI Shell and Mr. Valdes have never had any role in or involvement with designing, manufacturing, packaging, assembling, creating, or obtaining regulatory approval for any kind of Roundup®-branded herbicide.  Valdes Declaration ¶ 9.  KLI Shell and Mr. Valdes have never had any role in or involvement with determining what language should be included in labelling, or what warnings should be provided, for any kind of Roundup®-branded herbicide.  *Id*.  KLI Shell and Mr. Valdes have never had any role in or involvement with developing advertisements or commercials for any kind of Roundup®-branded herbicides or determining the content of any such advertisements or commercials.  *Id*.

37. In these circumstances, Plaintiff clearly does not have any viable claims against KLI Shell or Mr. Valdes under Florida law.  KLI Shell did not start selling Roundup®-branded herbicides at the KLI Shell Overseas Highway Store until long after Plaintiff stopped using those products, so she could not have purchased those products from KLI Shell or Mr. Valdes.  The products that allegedly caused Plaintiff's injuries were not KLI Shell's products or Mr. Valdes' products.  KLI Shell and Mr. Valdes had no control over, and no connection to, those products.  Moreover, KLI Shell and Mr. Valdes did not do anything (or fail to do anything that they were required to do) that caused Plaintiff's alleged injuries.  Thus, it is clear that Plaintiff has no viable claims against either of those defendants, *see supra* Paragraphs 26-27 (citing cases), within the meaning of the fraudulent joinder standard discussed above.

38. Therefore, this Court should disregard KLI Shell's citizenship and Mr. Valdes' citizenship when determining whether this removal is proper and whether the Court has subject matter jurisdiction over this lawsuit based on diversity of citizenship.

39. Disregarding those two fraudulently joined defendants – and disregarding Mr. Conroy (also fraudulently joined) – means that there is complete diversity of citizenship and that

the forum defendant rule does not apply because the remaining defendants are not Florida citizens.

## II.     The Jurisdictional-Amount-In-Controversy Requirement Is Satisfied Here.

40.     The Complaint seeks damages based on the allegation that Monsanto's Roundup®-branded herbicides caused Plaintiff's cancer (NHL).  Therefore, it is plausible from the face of the Complaint that Plaintiff seeks damages in excess of $75,000, exclusive of interest and costs, which satisfies the jurisdictional amount-in-controversy requirement.  28 U.S.C. § 1332(a); *see Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").  In fact, other lawsuits seeking damages for NHL allegedly caused by glyphosate-based herbicides have been filed against Monsanto in other federal courts asserting jurisdiction under Section 1332(a) and alleging damages in excess of $75,000, exclusive of interest and costs.

41.     In sum, this Court has original subject matter jurisdiction over this action based on Section 1332(a) because there is complete diversity of citizenship between Plaintiff and all defendants (disregarding the citizenship of any fraudulently joined defendant) and because the amount in controversy exceeds $75,000, exclusive of interest and costs.[2]

---

[2] Monsanto's prior removal of the State Court Action and this Court's subsequent remand order do not preclude Monsanto from filing this Notice of Removal.  That removal was triggered by two defendants not at issue here (Transform SR Development LLC d/b/a Kmart and Jose Luis Martinez-Alvarez) and was based on 28 U.S.C. §§ 1334(b), 1452 and federal bankruptcy proceedings that precluded claims against those two defendants – and the remand order was based on Plaintiff's voluntary dismissals of those two defendants.  *See supra* note 1 & paragraph 8.  However, this removal is based on **different factual bases** involving **different defendants** (Mr. Conroy, KLI Shell, and Mr. Valdes), a **different legal theory** (fraudulent joinder), and **different statutes** (28 U.S.C. §§ §§ 1332, 1441).  Thus, the prior removal and remand of the State Court Action do not preclude Monsanto from filing this Notice of Removal.  *See, e.g.*, *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 492-93 (5th Cir. 1996) (holding that, after remand from

## PROCEDURAL REQUIREMENTS

42. The Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida is located within the United States District Court for the Southern District of Florida. Therefore, removal to this Court satisfies the venue requirements of 28 U.S.C. § 1446(a).

43. This Notice of Removal is timely. When the State Court Action was commenced, the "case stated by the initial pleading [was] not removable," 28 U.S.C § 1446(b)(3), because the Complaint included claims against several Florida defendants. Thus, based on the face of the Complaint, this lawsuit was not removable due to lack of diversity of citizenship and due to the forum defendant rule, 28 U.S.C. § 1441(b)(2). The Conroy Declaration (dated March 27, 2021) and the Valdes Declaration (dated March 29, 2021), are the "other paper[s] from which it may first be ascertained that [this] case is one which is or has become removable." § 1446(b)(3). This Notice of Removal is timely because Monsanto is filing it within 30 days of March 27, 2021.

44. Home Depot consents to this removal. Consent to Removal by Defendant Home Depot USA, Inc. (attached as **Exhibit 6**).

45. Consent to removal by Bayer Corporation is not required because Florida courts lack personal jurisdiction over Bayer Corporation for the claims asserted in this lawsuit, Consent to Removal by Defendant Bayer Corporation (Ex. 3), so Bayer Corporation has not been "properly joined," 28 U.S.C. § 1446(b)(2)(A). Nevertheless, to the extent that Bayer

---

federal court to state court, a defendant is precluded from removing again on the same ground addressed in the prior removal notice but is allowed to file another removal notice based on a different factual basis); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913-14 n.2 (11th Cir. 2014) (quoting with approval, *inter alia*, *S.W.S. Erectors*, 72 F.3d at 493); *Watson v. Carnival Corp.*, 436 F. App'x 954, 955-56 (11th Cir. 2011) (same); *Ruiz v. Carnival Corp.*, No. 11-23170-Civ., 2012 WL 626222, at *1 (S.D. Fla. Feb. 24, 2012) (quoting and/or citing with approval, *inter alia*, *S.W.S. Erectors,* 72 F.3d at 492; *Watson*, 436 F. App'x at 956).

Corporation's consent may be deemed required, Bayer Corporation consents to this removal. Consent to Removal by Defendant Bayer Corporation.

46. Consent to removal by Bayer AG is not required because that defendant has not been served in the State Court Action, so that defendant has not been "properly . . . served." § 1446(b)(2)(A). Bayer AG's consent to removal also is not required because Bayer AG has not been "properly joined." *Id*. Courts in Florida lack personal jurisdiction over Bayer AG for the claims asserted against it in this case. Moreover, this lawsuit does not assert any viable claims against Bayer AG because: (a) any alleged exposure to Roundup®-branded herbicides at issue in this case ended in approximately 2014, Complaint ¶¶ 135, 138; (b) the transaction that resulted in Monsanto becoming an indirect, wholly-owned subsidiary of Bayer AG occurred much later (in 2018); and (c) Bayer AG did not assume any of Monsanto's liabilities for personal injury claims arising out of alleged exposure to Roundup®-branded herbicides.

47. Mr. Conroy's consent to removal is not required because Plaintiff fraudulently Mr. Conroy, so he has not been "properly joined." § 1446(b)(2)(A).

48. KLI Shell's consent to removal is not required because Plaintiff fraudulently KLI Shell, so that defendant has not been "properly joined." § 1446(b)(2)(A).

49. Mr. Valdes' consent to removal is not required because Plaintiff fraudulently Mr. Valdes, so he has not been "properly joined." § 1446(b)(2)(A).

50. The written notice required by 28 U.S.C. § 1446(d) will be promptly filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida and will be promptly served on Plaintiff.

51. Monsanto does not waive any defenses and expressly reserves its right to raise any and all defenses in subsequent proceedings.

52. If any question arises as to the propriety of this removal, Monsanto requests the opportunity to present written and oral argument in support of removal.

## CONCLUSION

For the foregoing reasons, Monsanto removes this lawsuit to the Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 (and any other applicable laws).

Dated: March 30, 2021

Respectfully submitted,

**McDERMOTT WILL & EMERY LLP**

*/s/ Anthony N. Upshaw*
ANTHONY N. UPSHAW
Florida Bar No.: 861091
aupshaw@mwe.com
MELISSA R. ALVAREZ
Florida Bar No.: 820091
malvarez@mwe.com
333 SE 2nd Avenue, Suite 4500
Miami, FL 33131
Tel: (305) 329-4431
Fax: (305) 675-8031
***Counsel for Defendant Monsanto Company***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **30th day of March, 2021,** a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system.

*/s/ Anthony N. Upshaw*